UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AMERICAN APPAREL USA, LLC, a California  :
Limited Liability Company,                                      :
                                                                :
                       Plaintiff,                               :  Civil Action No.
                                                                :  1:10-cv-06470-RWS
   -against-                                                   :
                                                                :
FORSYTHE COSMETIC GROUP, LTD., a New     :
York Corporation; Harriet Rose, an individual;   :  **AMENDED COMPLAINT**
Whitney Matza, an individual; and DOES 1 through :
10, inclusive,                                                  :
                                                                :
                       Defendants.                             :
                                                                :
------------------------------------------------------------------X

Plaintiff alleges and complains as follows:

## PARTIES

1. Plaintiff American Apparel, USA, LLC ("Plaintiff" or "American Apparel"), is a California limited liability company, organized under the laws of the state of California, with its principal place of business at 747 Warehouse Street, Los Angeles, California 90021.

2. On information and belief, Defendant Forsythe Cosmetic Group, Ltd. ("Defendant" or "Forsythe") is a corporation organized under the laws of New York.

3. On information and belief, Forsythe's principal place of business is located at 77 Harbor View West, Lawrence, New York 11559.

4. On information and belief, Defendant Harriet Rose is an individual residing in the state of New York.

5. On information and belief, Defendant Whitney Matza is an individual residing in the state of New York.

6. Plaintiff is presently unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1-10 ("DOES"), inclusive, and therefore sues said DOES by such fictitious names. Plaintiff will seek leave of the Court to amend its Complaint to show the true names and capacities of such DOES when the same has been ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of the fictitiously-named DOES are responsible to Plaintiff for the injuries suffered and alleged herein, or are subject to the jurisdiction of the Court as a necessary party for the relief herein requested.

## JURISDICTION AND VENUE

7. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2) insofar as the amount in controversy exceeds $75,000, inclusive of interest and costs, and is between a citizen of California and citizens of New York.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) insofar as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and a substantial part of the property that is the subject of this action is located in this judicial district.

9. Plaintiff is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendants because they have extensive contacts with, and conduct business within, the state of California and within this judicial district. Moreover, this Court has personal jurisdiction over Defendants because Plaintiff's claims arise out of, and results from, Defendants' contacts and conduct within this judicial district.

## GENERAL ALLEGATIONS

10. Plaintiff incorporates herein as though set forth in full each and every allegation of paragraphs 1 through 9 of this Amended Complaint.

444601v1

11. American Apparel is now, and at all times mentioned in this Complaint was, a manufacturer and retailer of clothing and accessories. American Apparel is based in downtown Los Angeles. American Apparel operates the largest garment factory in the United States at a time when most apparel production has moved offshore. American Apparel currently employs 10,000 people worldwide and operates more than 260 retail stores in 19 countries.

12. Forsythe is now, and at all times mentioned in this Complaint was, in the business of designing, manufacturing, constructing, assembling, compounding, and selling nail polish for use by members of the general public.

13. In 2009, American Apparel began purchasing nail polish from Forsythe for the purpose of reselling said nail polish in American Apparel's retail and online stores.

14. In or around mid-December 2009, American Apparel publically announced the launch of its nail polish line. The media quickly began reporting on American Apparel's new line of nail polish, which generated a great deal of anticipation and high expectations amongst the general consuming public and fashion industry. This all changed within one short month.

15. Soon after American Apparel launched its new line of nail polish, in or about early January 2010, American Apparel began receiving reports from its customers and retail store employees that the nail polish manufactured by Forsythe was "exploding." Specifically, reports began surfacing that the bottles containing the nail polish were breaking, leaking, cracked, and otherwise compromised.

16. American Apparel quickly recalled the nail polish from all of its retail stores. American Apparel also reported its recall to the U.S. Consumer Product Safety Commission.

444601v1

17.     The media quickly reported on American Apparel's recall. The positive press that American Apparel had just received the previous month quickly turned into headlines reading as follows:

- *"Does American Apparel's New Nail Polish Contain Hazardous Materials?"* – Jezebel, January 26, 2010

- *"American Apparel Admits Breaking Bottles Caused Nail Polish Recalls"* – New York Fashion, January 27, 2010

- *"American Apparel's Nail Polish is Hazardous and Other Epic Product Recalls"* – Blackbookmag.com, January 26, 2010

- *"Give Me Tomatoes or Give Me Nail Polish: How American Apparel Missed a Handmade Opportunity"* – EmilyCavalier.com, January 28, 2010

18.     As a result of the foregoing, as well as other wrongdoings on the part of Forsythe, American Apparel decided to change nail polish suppliers. Forsythe was aware of American Apparel's decision.

19.     Michaela Holmes, a Junior Buyer for American Apparel, had extensive communications with Forsythe's President, Harriet Rose, and its Director of Regulatory Affairs, Whitney Matza, two of the individual Defendants herein, during the relevant period of time.

20.     While American Apparel was waiting for a new supplier of nail polish, Ms. Holmes spoke with Ms. Matza and reached an agreement that American Apparel would purchase $8,762.40 worth of ready-to-sell nail polish from Forsythe (hereinafter, the "Paid Order").

21.     Ms. Matza represented to Ms. Holmes that Forsythe would deliver this nail polish immediately upon receiving full payment of the Paid Order from American Apparel. In reliance on Ms. Matza's promise, Ms. Holmes instructed American Apparel's accounts payable department in Los Angeles, headed by Louis Canadas and employing Noel Lim and Nelson Olasco, to remit the check for the Paid Order in full, which it promptly did. A copy of the

4

cancelled check issued by American Apparel to Forsythe for the Paid Order, dated April 30, 2010, is attached hereto as Exhibit A. However, American Apparel *never* received from Forsythe the nail polish for which it paid, and was instead subjected to a scheme of deliberate fraud and extortion perpetrated by Ms. Matza, Ms. Rose and Forsythe.

22. On Friday, April 30, 2010, Ms. Holmes emailed Ms. Matza, informing Ms. Matza that it appeared the check from American Apparel for the Paid Order had been received by Forsythe and asking to arrange to pick up the nail polish, per the stated agreement between the parties. Exhibit B. Forsythe had, in fact, cashed the check that day, as indicated on the cancelled check. *See* Exhibit A.

23. However, Ms. Matza merely replied that she would "check into" it and instead asked about an alleged March 28, 2010 order for an additional 50,000 bottles of nail polish, later increased to 68,576 bottles (the "Alleged Order"), for which Forsythe "need[ed] to be reimbursed." Exhibit C. As Ms. Matza knew, this order *was never placed by American Apparel*, but Ms. Matza, on behalf of Forsythe and at the instruction of Ms. Rose, continued to misrepresent to a junior buyer at American Apparel that it had been placed.

24. On the following Monday, May 3, 2010, in response to another inquiry from Ms. Holmes, Ms. Matza confirmed receipt of the check from American Apparel but brushed off Ms. Holmes request to make the nail polish in the Paid Order available for pick up, claiming that Forsythe had "other orders that ha[d] to get packed and shipped first" and stating she would let Ms. Holmes know once she had a "pick up date" for her. Exhibit D.

25. Ms. Holmes then called Ms. Matza to discuss the matter. On the call, Ms. Matza then claimed that, based on specific instructions from Ms. Rose, Forsythe would refuse to ship the Paid Order to American Apparel unless and until American Apparel acknowledged the

Alleged Order – despite Forsythe's acknowledgement that American Apparel had already paid in full for the Paid Order and Forsythe's previous promise to ship the Paid Order as soon as payment was received. Ms. Matza further represented to Ms. Holmes, again stated based on the instructions of Ms. Rose, that the Paid Order would ship as soon as American Apparel acknowledged the Alleged Order. Ms. Holmes immediately sent an email, copying Ms. Rose, to Ms. Matza demanding the release of the Paid Order, noting that the check was sent to her "in trust." Exhibit E.

26. Still, Forsythe refused to release the Paid Order. Ms. Holmes, in desperate need for the Paid Order to provide necessary inventory and in reliance upon Ms. Matza's representation that the Paid Order would be immediately released if American Apparel acknowledged the Alleged Order, sent an email to Ms. Matza on Friday, May 7, 2010, acknowledging, and requesting an invoice for, the Alleged Order, while again requesting immediate shipment of the Paid Order. Exhibit F.

27. However, Forsythe still refused to release the Paid Order. Ms. Matza's email response on May 7th promised to forward an invoice for the Alleged Order, but now imposed another new condition on the Paid Order. Specifically, Ms. Matza said that Forsythe would not release the Paid Order unless it coincided with the Alleged Order, meaning American Apparel would have to make full payment on the Alleged Order in order to obtain the order for which they had already paid. Exhibit G. Ms. Holmes immediately responded that this was unacceptable and again requested the shipment of the Paid Order without any further delay. Exhibit H.

28. Forsythe persisted in its refusal to release the Paid Order. Ms. Matza responded to Ms. Holmes that Forsythe would not release the Paid Order without knowing that the bottles

444601v1

in the Alleged Order "are paid for," demanding "payment by COD" in order to obtain the rest of American Apparel's order. Exhibit I. Ms. Holmes wrote back that the Paid Order and the Alleged Order (whose acknowledgment occurred only because Forsythe forced Ms. Holmes to do so) were separate orders and, given the fact that Forsythe had American Apparel's check for the Paid Order in its possession for over a week, "the shipment needs to be released." Exhibit J. Ms. Matza continued to hold the Paid Order hostage, blatantly asserting that "[i]f you want [the Paid Order] . . ., then we will need payment for the [Alleged Order] via COD at the same time." Exhibit K. Ms. Holmes again responded that "[t]his doesn't make any sense," as they were two separate orders and Forsythe "already ha[d] a check for the first shipment." Exhibit L. Ms. Matza's response was merely to send Ms. Holmes the invoice for the Alleged Order, demanding over $24,000 in new funds before releasing the $8,762.40 order for which American Apparel had already paid. *See* Exhibit M.

29.  Under ever-increasing pressure to obtain the Paid Order in order to restock American Apparel's retail stores, pressure of which Forsythe was well aware, Ms. Holmes felt trapped by Forsythe's schemes and with no other option but to try to provide payment for the Alleged Order to avoid further delay in the shipment of the Paid Order. She emailed Ms. Matza that she would work with American Apparel's accounting department to obtain such payment as quickly as possible. Exhibit N. Even then, Ms. Matza demanded written confirmation from Ms. Holmes that American Apparel would send a check for over $24,000 to pay for over 68,000 bottles via FedEx by May 11, 2010, and only upon such written confirmation would Forsythe "allow American Apparel to pick up" the Paid Order on the following Monday (May 10, 2010), once the confirmation was forwarded to Ms. Rose. Exhibit O. In her desperation for the Paid

Order, and again in reliance upon Ms. Matza's representation on behalf of Ms. Rose, Ms. Holmes provided the confirmation Ms. Matza demanded. Exhibit P.

30.  Even after *that*, Ms. Rose did not agree to release the Paid Order on May 10th, *as Ms. Matza had just represented Forsythe would*, but instead agreed only to release the Paid Order "[u]pon receipt of American Apparel's check for $24,001." Exhibit Q. In response to Forsythe changing the terms of the agreement *yet again*, Ms. Holmes sought confirmation from Ms. Rose that the Paid Order would be shipped on May 10th. Exhibit R. Ms. Rose instead repeated that Forsythe would not ship anything to American Apparel until it received the check for the Alleged Order. Exhibit S.

31.  Finally, in the face of Forsythe's continued fraudulent behavior, American Apparel's in-house counsel, Joyce Crucillo, was forced to intervene. On May 10, 2010, Ms. Crucillo demanded from Ms. Matza that the Paid Order be delivered to American Apparel by 1 pm the next day or American Apparel would have no choice but to file suit against Forsythe and the Forsythe employees involved for its fraud and breach of contract. Exhibit T. Despite even this email and despite Ms. Matza's ethical obligations as a lawyer not to communicate directly with a represented party, Ms. Matza emailed Ms. Holmes the next day demanding the tracking information for the payment of the Alleged Order before American Apparel would be allowed to pick up the Paid Order. Exhibit U.

32.  The Paid Order was *never* delivered. Forsythe, through its contact person Ms. Matza under the supervision and instruction of Ms. Rose, deliberately and intentionally defrauded American Apparel, extracting tens of thousands of dollars from American Apparel beyond what had been agreed without providing, and with no intention to provide, any of the

444601v1

goods promised through repeated false representations, including with regard to a non-existent order.

33. On May 13, 2010, American Apparel initiated this action which was transferred to this Court.

## FIRST CAUSE OF ACTION

(Negligence – Against Forsythe)

34. Plaintiff realleges and incorporates herein by reference, as if set forth fully herein, each and every allegation contained in paragraphs 1 through 33, inclusive.

35. Plaintiff purchased nail polish product that was designed, manufactured, constructed, assembled, compounded and sold by Forsythe.

36. Forsythe so negligently and carelessly designed, manufactured, constructed, assembled, compounded and sold the nail polish that it was dangerous and unsafe for its intended uses. Specifically, the nail polish bottles were breaking, leaking, cracked, and otherwise compromised.

37. As a direct and proximate cause of Forsythe's negligence and carelessness as described above, American Apparel sustained significant damages in an amount to be proven at trial, but no less than $5,000,000.00.

## SECOND CAUSE OF ACTION

(Negligence *Per Se* – Against Forsythe)

38. Plaintiff realleges and incorporates herein by reference, as though set forth in full herein, each and every allegation contained in paragraphs 1 through 37, inclusive.

39. Plaintiff purchased nail polish product that was designed, manufactured, constructed, assembled, compounded and sold by Forsythe.

444601v1

40. Forsythe negligently and carelessly designed, manufactured, constructed, assembled, compounded and sold the nail polish in violation of various health and safety codes, and other applicable laws, that it was dangerous and unsafe for its intended uses. Specifically, the nail polish bottles were breaking, leaking, cracked and otherwise compromised.

41. As a direct and proximate cause of Forsythe's negligence and carelessness as described above, American Apparel sustained significant damages in an amount to be proven at trial, but no less than $5,000,000.00.

## THIRD CAUSE OF ACTION

(Strict Products Liability – Against Forsythe)

42. Plaintiff realleges and incorporates herein by reference, as though set forth in full herein, each and every allegation contained in paragraphs 1 through 41, inclusive.

43. At all times mentioned in this Amended Complaint, the nail polish and its components were defective as to design, manufacture and warnings, causing the product to be in a defective condition that rendered them dangerous and unsafe for their intended uses.

44. As a direct and proximate result of the dangerous and defective condition of the nail polish product, American Apparel sustained significant damages in an amount to be proven at trial, but no less than $5,000,000.00.

## FOURTH CAUSE OF ACTION

(Breach of Warranties – Against Forsythe)

45. Plaintiff realleges and incorporates herein by reference, as though set forth in full herein, each and every allegation contained in paragraphs 1 through 44, inclusive.

46. Forsythe is liable to American Apparel for breaching express and implied warranties that they made regarding the nail polish product that it sold to American Apparel.

444601v1


These express and implied warranties included warranties of merchantability and/or fitness for a particular purpose.

47. Because the nail polish product was defective, as described above, American Apparel could not continue selling this product, and was forced to recall the product from its retail stores worldwide. This is a breach of the implied warranty of merchantability and fitness for a particular purpose.

48. As a direct and proximate result, American Apparel sustained significant damages in an amount to be proven at trial, but no less than $5,000,000.00.

## FIFTH CAUSE OF ACTION

(Breach of Contract – Against Forsythe)

49. Plaintiff realleges and incorporates herein by reference, as though set forth in full herein, each and every allegation contained in paragraphs 1 through 48, inclusive.

50. American Apparel and Forsythe entered into a contract whereby American Apparel would purchase, and Forsythe would sell, approximately $8,700 worth of nail polish product.

51. American Apparel has fulfilled all of its obligations under this contract.

52. Forsythe has breached this contract by refusing to deliver the nail polish, despite the fact that it received, and cashed, American Apparel's check constituting full payment for this order.

53. As a direct and proximate result, American Apparel sustained significant damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

(Fraud – Against All Defendants)

54. Plaintiff realleges and incorporates herein by reference, as though set forth in full herein, each and every allegation contained in paragraphs 1 through 53, inclusive.

55. As detailed above, Defendants represented to American Apparel that Forsythe would deliver approximately $8,700 worth of nail polish upon receipt of full payment thereof from American Apparel. At the time Defendants made this representation to American Apparel, they did not intend to deliver the nail polish.

56. In reliance upon Defendants' representations, American Apparel was induced to and did deliver a check for approximately $8,700 in full payment. Had American Apparel known the true facts, it would not have made this payment.

57. As a direct and proximate result of Defendants' fraud and deceit and the facts alleged herein above, American Apparel sustained significant damages in an amount to be proven at trial.

58. In committing the acts herein alleged, Defendants acted with oppression, fraud, and malice, and American Apparel is entitled to punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, American Apparel prays for judgment as follows:

1. That Defendants be required to pay American Apparel such damages as American Apparel has sustained as a result of Defendants' above-described acts in an amount not less than $5,000,000.00;

2. For punitive damages for Defendants' fraudulent conduct;

444601v1

3.       For attorneys' fees and costs;

4.       For pre-judgment interest on all sums awarded; and

5.       For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 5, 2010

                              Respectfully Submitted,

                              WILK AUSLANDER LLP

                              By: _____ /BY E.B.L.
                                  Stuart M. Riback (SMR-2443)
                                  675 Third Avenue
                                  New York, New York 10017-5704
                                  (212) 421-2233

                              *Attorneys for Plaintiff*


To:       David M. Pollack (DP 6143)
           Lewis Brisbois Bisgaard & Smith, LLP
           77 Water Street, Suite 2100
           New York, NY 10005
           (212) 232-1300

           *Attorneys for Defendants*

444601v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AMERICAN APPAREL USA, LLC, a California
Limited Liability Company,

                Plaintiff,

  -against-                                Civil Action No.
                                          1:10-cv-06470-RWS

FORSYTHE COSMETIC GROUP, LTD., a New
York Corporation; Harriot Rose, an individual;
Whitney Matza, an individual; and DOES 1 through
10, inclusive,

                Defendants.

------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

      I hereby certify that on this date the foregoing Amended Complaint was served on those listed below at the address set forth by electronic filing:

David M. Pollack (DP 6143)
Lewis Brisbois Bisgaard & Smith, LLP
77 Water Street, Suite 2100
New York, NY 10005
(212) 232-1300

*Attorneys for Defendants*


Dated: November 5, 2010

                                                          *[signature]*
                                                    Eric B. LaMons, Esq.