ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

AMERICAN APPAREL USA, LLC, a
California Limited Liability Company,

               Plaintiff,

   -against-

FORSYTHE COSMETIC GROUP, LTD., a
New York Corporation; HARRIET ROSE, an
individual; WHITNEY MATZA, an individual;
and DOES 1 through 10, inclusive,

               Defendants.

------------------------------------------X

10 Civ. 6470 (RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

A P P E A R A N C E S:

       Attorneys for Plaintiff

       WILK AUSLANDER, LLP
       675 Third Avenue
       New York, NY  10017
       By:  Stuart M. Riback, Esq.


       Attorneys for Defendants

       LEWIS BRISBOIS BISGAARD & SMITH, LLP
       77 Water Street, Suite 2100
       New York, NY  10005
       By:  David M. Pollack, Esq.

**Sweet, D.J.**

Defendants Forsythe Cosmetic Group, Ltd. ("Forsythe"), Harriet Rose ("Rose") and Whitney Matza ("Matza") (the "Individual Defendants") (collectively, the "Defendants") have moved under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Sixth Cause of Action alleged in the Amended Complaint ("AC") brought by Plaintiff American Apparel USA, LLC ("American Apparel" or the "Plaintiff"). Based upon the conclusions set forth below, the motion is granted.

**<u>Prior Proceedings</u>**

Plaintiff originally filed its Complaint on or about May 14, 2010 in the United States District Court, Central District of California. Upon the Court's granting of Defendants' motion for forum <u>non conveniens</u> pursuant to 28 U.S.C. § 1404(a), the matter was transferred to the Southern District of New York on or about September 7, 2010. Pursuant to a Stipulation between the parties, Defendants filed and served their Motion to Dismiss Plaintiff's Sixth Cause of Action for Fraud, as well as their Answer to the First through Fifth Causes of Action of the Plaintiff's Complaint on October 27, 2010.

Plaintiff's Amended Complaint was thereafter filed in the Southern District of New York and served on November 5, 2010.

The AC alleges that American Apparel is a manufacturer, distributor and retailer of clothing and accessories that is based in downtown Los Angeles and that Forsythe is in the business of designing, manufacturing, constructing, assembling, compounding and selling nail polish for use by members of the general public (AC ¶¶ 11, 12). Plaintiff alleges that in 2009 it began purchasing nail polish from Forsythe for the purpose of reselling it in its retail and online stores, and that in December of 2009 it publicly announced the launch of this nail polish line.  (AC ¶¶ 13, 14.)

The AC alleges that in or about early January 2010, American Apparel began receiving reports from its customers and retail store employees that the nail polish manufactured by Forsythe came in bottles that were breaking, leaking, cracked and otherwise compromised.  (AC ¶ 15.)

The first five causes of action against Forsythe in the AC include: negligence (AC ¶¶ 34-37), negligence per se (AC

¶¶ 38-41), products liability (AC ¶¶ 42-44), breach of warranty
(AC ¶¶ 45-48), breach of contract (AC ¶¶ 49-43).

The AC's sixth cause of action alleges fraud by
Forsythe and also the sole claim for relief against the
Individual Defendants, Rose (Forsythe's Owner) and Matza
(Forsythe's Director of Regulatory Affairs).  (AC ¶¶ 54-58.)

The allegations which underlie the cause of action for
fraud appear initially in the AC's "general allegations," and
allege as follows:  Michaela Holmes ("Holmes"), a Junior Buyer
for American Apparel, had extensive communications with
Forsythe's President, Rose, and its Director of Regulatory
Affairs, Matza, during the relevant period.  (AC ¶ 19.)  While
"waiting for a new supplier of nail polish," Holmes spoke with
Matza and reached an agreement that American Apparel would
purchase $8,762.40 worth of ready-to-sell nail polish from
Forsythe (the "Paid Order").  (AC ¶ 20.)  Matza represented to
Holmes that Forsythe would deliver this nail polish immediately
upon receiving full payment of the order from American Apparel,
and in reliance upon this promise, Holmes instructed American
Apparel's accounts payable department to remit payment in full,
which it did.  (AC ¶ 21.)  American Apparel contends that it

3

never received the nail polish from Forsythe, for which payment
was remitted on April 30, 2010, and was "instead subjected to a
scheme of deliberate fraud and extortion perpetrated by Matza,
Rose and Forsythe."   (Id.)

Specifically, the AC alleges that on April 30, 2010,
Holmes emailed Matza, informing her that it appeared that the
check for the Paid Order had been received and asking to arrange
pick up, and that Matza replied that she would check into it.
(AC ¶ 22-23).  The AC alleges (AC ¶ 23) that in the same email
Matza asked about an alleged March 28, 2010 order for 68,576
bottles (the "Alleged Order"), for which Forsythe "need[ed] to
be reimbursed." (AC Ex. C.)  Plaintiff contends that this order
was never placed by American Apparel.  (AC ¶ 23.)

The AC further alleges that after Forsythe cashed the
$8,762.40 check, Matza stated on a call with Holmes that
Forsythe "would refuse to ship the Paid Order to American
Apparel unless and until American Apparel acknowledged the
Alleged Order."  (AC ¶ 25.)  The AC alleges that "in reliance
upon Ms. Matza's  representation," Holmes acknowledged and
requested an invoice for the Alleged Order, but that Forsythe
continued to refuse to release the Paid Order.  (AC ¶ 26-27.)

4

The AC alleges that though a series of emails, Matza stated that Forsythe would not release the Paid Order unless (1) it coincided with the Alleged Order, (2) Matza received written confirmation from Holmes that American Apparel would send a check for roughly $24,000 for the Alleged Order, and (3) Forsythe received payment for the Alleged Order prior to release of the Paid Order.  (AC ¶ 27-30.)  The Paid Order was never delivered.  (AC ¶ 32.)

The AC alleges that "Defendants represented to American Apparel that Forsythe would deliver approximately $8,700 worth of nail polish upon receipt of full payment thereof from American Apparel" but that "[a]t the time Defendants made this representation to American Apparel, they did not intend to deliver the nail polish."  (AC ¶ 55.)  Plaintiff alleges that "[i]n reliance on Defendants' representations, American Apparel was induced to and did deliver a check for approximately $8,700 in full payment"  (AC ¶ 56) and "[a]s a direct and proximate result . . . American Apparel has sustained damages in an amount to be proven at trial."  (AC ¶ 57.)

The instant motion was heard on January 19, 2011.

**The 9(b) and 12(b)(6) Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Though the Court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

The Plaintiff's sixth cause of action, which alleges fraud by Forsythe and the Individual Defendants, is subject to the heightened pleading standard of Rule 9(b). Rule 9(b) requires that in all allegations of fraud, the circumstances

constituting fraud "shall be stated with particularity." Fed. R.
Civ. P. 9(b).  The concerns animating Rule 9(b) are (1) to
provide a defendant with fair notice of the claims against it;
(2) to protect a defendant from harm to its reputation or
goodwill by unfounded allegations of fraud; and (3) to reduce
the number of strike suits. See <u>DiVittorio v. Equidyne</u>
<u>Extractive Indus., Inc.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987).


"Conclusory statements and allegations are not enough
to meet the Rule 9(b) pleading requirements." <u>Musalli Factory of</u>
<u>Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.</u> 382 Fed. Appx.
107, 108 (2d Cir. 2010) (citing <u>In re Carter-Wallace, Inc., Sec.</u>
<u>Litig.</u>, 220 F.3d 36, 40 (2d Cir. 2000)).  To avoid speculative
and conclusory claims and thereby comply with Rule 9(b), the
Second Circuit has held that "'the complaint must: (1) specify
the statements that the plaintiff contends were fraudulent, (2)
identify the speaker, (3) state where and when the statements
were made, and (4) explain why the statements were fraudulent.'"
<u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2d Cir. 2006)
(quoting <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d
Cir.1993)).  "'The requisite 'strong inference' of fraud may be
established either by: (a) alleging facts to show that
defendants had both motive and opportunity to commit fraud, or

(b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" <u>Id.</u> at 290-91 (2d Cir. 2006) (quoting <u>Shields v. City Trust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994)).  In addition, "[w]hen fraud is alleged against multiple defendants, a plaintiff . . . must set forth separately the acts complained of by each defendant." <u>Double Alpha, Inc. v. Mako Partners, L.P.</u>, No. 99 Civ. 11541, 2000 WL 1036034, at *3 (S.D.N.Y. July 27, 2000) (quoting <u>Silva Run Worldwide Ltd. v. Gaming Lottery Corp.</u>, No. 96 Civ. 3231, 1998 WL 167330, at *11 (S.D.N.Y. Apr. 8, 1998)).

## California Law Applies to the Sixth Cause of Action

Although this case was transferred from the Central District of California, California choice-of-law principles continue to apply.  A transfer of venue under 28 U.S.C. § 1404(a) affects a change in court room, not a change in the law applicable to the case.  "[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." <u>Van Dusen v. Barrack</u>, 376 U.S. 612 (1964). <u>See also</u> <u>Ferens v. John Deere Co.</u>, 494 U.S. 516 (1990) (transferee forum required to apply law of transferor court,

8

regardless of which party initiated transfer); Abdullahi v. Pfizer, Inc., 562 F.3d 163, 190 (2d Cir. 2009) (transferee court was "obligated to apply the state law [choice-of-law rules] that would have been applicable if the case had not been transferred"). This Court therefore applies California law with respect to the choice-of-law issue.

In choice-of-law questions, California utilizes the "governmental interest" analysis, "under which a court carefully examines the governmental interests or purposes served by the applicable statute or rule of law of each of the affected jurisdictions to determine whether there is a 'true conflict.' If such a conflict is found to exist, the court analyzes the jurisdictions' respective interests to determine which jurisdiction's interests would be more severely impaired if that jurisdiction's law were not applied in the particular context presented by the case." Kearney v. Salomon Smith Barney, Inc., 137 P.3d 914, 917 (Cal. 2006); CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1141-42 (9th Cir. 2010). California has specifically rejected the alternative "place of the wrong" rule. Reich v. Purcell, 432 P.2d 727, 729 (Cal. 1967).

The government interest analysis consists of three

steps:

> First, the court examines the substantive law of
> each jurisdiction to determine whether the laws
> differ as applied to the relevant transaction.
> Second, if the laws do differ, the court must
> determine whether a "true conflict" exists in
> that each of the relevant jurisdictions has an
> interest in having its law applied. If only one
> jurisdiction has a legitimate interest in the
> application of its rule of decision, there is a
> "false conflict" and the law of the interested
> jurisdiction is applied. On the other hand, if
> more than one jurisdiction has a legitimate
> interest, the court must move to the third stage
> of the analysis, which focuses on the
> "comparative impairment" of the interested
> jurisdictions. At this stage, the court seeks to
> identify and apply the law of the state whose
> interest would be the more impaired if its law
> were not applied.

CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1142 (9th Cir.

2010) (quoting Abogados v. AT & T, Inc., 223 F.3d 932, 934

(9th Cir. 2000) (citations and internal quotation marks

omitted)).  See also Kearney, 137 P.3d at 922; Love v.

Associated Newspapers, Ltd., 611 F.3d 601, 610 (9th Cir.

2010) (quoting Downing v. Abercrombie & Fitch, 265 F.3d

994, 1005 (9th Cir. 2001)).


Under California's conflict-of-law principles, "[a]s a

default, the law of the forum state will be invoked, and the

burden is with the proponent of foreign law to show that the foreign rule of decision" should be applied. CRS Recovery, Inc. v. Laxton, 600 F.3d at 1142 (citing Hurtado v. Superior Court, 522 P.2d 666, 670 (Cal. 1974)). At the threshold, if the party advocating the application of a foreign state's law fails to meet its burden of showing either that the law of the two fora are different or that a true conflict exits, the court "'may properly find California law applicable without proceeding'" further. Pokorny v. Qllixtar, Inc., 601 F.3d 987, 995 (9th Cir. 2010) (quoting Wash. Mut. Bank, FA v. Superior Court, 15 P.3d 1071, 1081 (Cal. 2001)).[1]

The parties agree that with regard to sufficient pleading of the sixth cause of action, there is no conflict between California and New York law. Defs.' Mem. in support of Defs.' Mot. to Dismiss 6 (stating that "the analysis regarding the adequacy, or lack thereof, of plaintiff's pleading of misplaced its 'Sixth Cause of Action' would be for all intents

---

[1] Defendants' reliance on Ironforge.com v. Paychex, Inc., 747 F. Supp. 2d 384(W.D.N.Y. 2010) and the Restatement (Second) of Conflict of Law § 187(2) is misplaced. Unlike here, the parties in Ironforge.com had a written agreement with regard to their choice of law in the event a dispute arose between them. Similarly, Restatement § 187 addresses choice-of-law issues in the context of an agreement by the parties as to their choice of law. Under California law, which applies the principles set forth in Restatement § 187, Ironforge.com, 747 F. Supp. 2d at 391 (quoting Nedlloyd Lines B.V. v. Superior Court, 11 Cal. Rptr. 2d 330, 464-65 (1992)), the existence of an agreement as to choice of law dictates a different analysis than that here.

and purposes the same" under New York and California law);
Defs.' Reply Mem. 6 ("[W]ith respect to Plaintiff's cause of
action for fraud, the elements regarding the particularity
required of a pleading are basically the same under California
as they are under New York state law."); Pl.'s Mem. in Opp'n to
Defs.' Mot. to Dismiss 6-7 (same).

        Pursuant to California law, the elements for a cause
of action sounding in fraud must be pled as follows:  (1)
misrepresentation (false representation, concealment or
nondisclosure); (2) knowledge of falsity; (3) intent to defraud,
i.e. to induce reliance; (4) justifiable reliance; and (5)
resulting damage.  Philipson & Simon v. Gulsvig, 64 Cal. Rptr.
504, 516 (Cal. Ct. App. 4th Dist. 2007) (quoting Agricultural
Ins. Co. v. Superior Court, 82 Cal Rptr.2d 594, 402 (Cal. Ct.
App. 2d Dist. 1999); Andrews Farms v. Calcot, Ltd., 527
F.Supp.2d 1239, 1250 (E.D. Cal. 2007) (citing Lazar v. Superior
Court, 909 P.2d 981 (Cal. 1996)); Robinson Helicopter Co., Inc.
v. Dana Cop., 102 P.3d 268, 274 (Cal. 2004) (citing Lazar v.
Superior Court, 909 P.2d 981 (Cal. 1996)).

        New York law requires these same elements: "(1) a
material misrepresentation or omission of fact (2) made by

defendant with knowledge of its falsity (3) and intent to [induce reliance]; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff." <u>Herzfeld v. JPMorgan Chase Bank, N.A.</u>, 354 Fed. Appx. 488, 489 (2d Cir. 2009) (citing <u>Crigger v. Fahnestock & Co.</u>, 443 F.3d 230, 234 (2d Cir. 2006); <u>Gaidon v. Guardian Life Ins. Co.</u>, 725 N.E.2d 598 (N.Y. 1999)). <u>See also</u> <u>Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank</u>, 57 F.3d 146, 153 (2d Cir. 1995) (citing <u>Keywell Corp. v. Weinstein</u>, 33 F.3d 159 (2d Cir. 1994); <u>Katara v. D.E. Jones Commodities, Inc.</u>, 835 F.2d 966, 970-71 (2d Cir. 1987)).

   Defendants have not carried their burden of demonstrating that a conflict of law exists.  The law of California, as the forum state, therefore applies. <u>See, e.g., SA Empresa De ViacaoAerea Rio GrandeIlse v. Boeing Co.</u>, 641 F.2d 746, 754 (9th Cir. 1981) ("Because we perceive no conflict in the law of the two relevant jurisdictions, we examine this issue in light of the jurisprudence of the original forum state, in keeping with California's choice-of-law laws.").

## The Fraud Allegations Are Insufficient

Under California law, to state a cause of action for fraud a plaintiff must allege a misrepresentation, knowledge by the party making the representation that it was false when made, intent to defraud, that is to induce reliance, justifiable reliance by the plaintiff, and resulting injury.

Plaintiff has not met the pleading requirements as they pertain to the elements of the Defendants' alleged fraud.

American Apparel's fraud claim is based on the allegation that the parties contracted for Forsythe to ship approximately $8,700 worth of nail polish in bottles to American Apparel, which Forsythe failed to perform. The AC alleges acts of Defendants that subjected Plaintiff "to a scheme of deliberate fraud and extortion perpetrated by Ms. Matza, Ms. Rose and Forsythe." (AC ¶ 21.) Those allegations center around Matza's alleged misrepresentations concerning the Alleged Order. Each of these alleged actions took place after the parties had already entered into their contract for the filled nail polish bottles, after American Apparel claims to have delivered its payment of $8,762.40 to Forsythe pursuant to said contract, and

14

accordingly after Forsythe allegedly failed to perform under the contract to deliver its product.  These subsequent allegations do not sufficiently allege actions that could have induced American Apparel to deliver the $8,762.40 check.  Nor has American Apparel identified specific statements, identifying the speaker and stating where and when those statements were made, prior to the alleged contract upon which it could have relied to its detriment. See Lerner, 459 F.3d at 290.  As such, American Apparel does not adequately allege actual reliance, as required under California law.  Mirkin v. Wasserman, 858 P.2d 568, 570 (Cal. 1993)("It is settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation. The law appears always to have been so in this state.") (citations omitted).

Moreover, American Apparel has not adequately plead what damages or injury it suffered as a result of the alleged misrepresentations regarding the existence of a pre-existing Alleged Order.  Although Plaintiff claims that Matza, at the direction of Rose, induced "Ms. Holmes to bind American Apparel to a fictional order and to fictional payment obligations in reliance upon Ms. Matza's false statements," American Apparel

15

does not claim that it was bound by the Alleged Order or that it paid any sum to Defendants in compliance with it.  <u>See</u> Pl. Opp'n to Def. Mot. to Dismiss 11, 14-17.

While Rule 9 does not require that damages plead be precisely calculated or itemized, here Plaintiff has not plead what if any injury it suffered as a result of the alleged fraud. Plaintiff's allegations are therefore insufficient as a matter of law.[2]

---

[2] The Court need not reach whether the economic loss rule might act as an independent bar to Plaintiff's fraud claim.  It is well established under California law that "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." <u>Erlich v. Menezes</u>, 981 P.2d 978, 983 (Cal. 1999) (citation omitted).  California adopts, and indeed was the originator of, the economic loss rule, which "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." <u>Robinson Helicopter Co., Inc. v. Dana Corp.</u>, 102 P.3d 268, 272 (Cal. 2004) (citation omitted).

There are limited exceptions to this rule.  As the California Supreme Court has explained:

> Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury; for breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public policy; or where the contract was fraudulently induced. In each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm.

<u>Erlich</u>, 981 P.2d at 983 (citations and internal quotation marks omitted).

California has recognized that in some cases of fraud, an exception to the economic loss rule is warranted.  <u>Robinson Helicopter</u>, 102 P.3d 268.  However, in <u>Robinson</u>, plaintiff incurred costs beyond those lost in the bargain, and the alleged fraud exposed plaintiff to "liability for personal damages if a helicopter crashed and to disciplinary action by the FAA," and put plaintiff's customers at risk of physical injury. <u>Id.</u> 274-75.

16

For the foregoing reasons, Plaintiff's Amended Sixth
Cause of Action for Fraud is dismissed as to all Defendants.


It is so ordered.


New York, NY
June 7 , 2011

ROBERT W. SWEET
U.S.D.J.